UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
NAISHIA E. DAVIS,                   )
                                    )
           Plaintiff,               )
                                    )
      v.                            )   Civil Action No. 10-1756 (RBW)
                                    )
DISTRICT OF COLUMBIA,               )
                                    )
           Defendant.               )
                                    )
_____)

# MEMORANDUM OPINION

The plaintiff, Naishia Davis, acting as Personal Representative for the Estate of James Brodus Miller, Sr. ("Decedent") and Next Friend for James Brodus Miller, Jr., filed an amended complaint on November 15, 2010, claiming that the District of Columbia ("the District"), a municipal corporation and the defendant in this civil case, (1) negligently caused the Decedent's death, (2) is liable for an assault and battery sustained by the Decedent, and (3) is liable for damages under 42 U.S.C. § 1983 for violating the Decedent's Fourth Amendment rights. See Plaintiff's First Amended Complaint for Negligence, Negligent Hiring, Assault and Battery, and Violation of Civil and Constitutional Rights ("Am. Compl."). Currently before the Court is the defendant's Motion to Dismiss the Amended Complaint. See Defendant's Renewed Motion to Dismiss the Amended Complaint Or, In the Alternative, For Summary Judgment ("Def.'s Mot.") at 1. After carefully considering all of the relevant submissions made by the parties,[1] the Court will grant the defendant's Motion to Dismiss and dismiss the claim brought under 42 U.S.C. §

---

[1] In addition to the documents already referenced, in deciding this motion, the Court considered the following filings: the plaintiff's Opposition to Motion to Dismiss ("Pl.'s Opp'n"), and the defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss the Amended Complaint or, in the alternative, for Summary Judgment ("Def.'s Reply").

1

1983 because the plaintiff has failed to plead sufficient facts, as required by Federal Civil Rule 8(a), to show that a policy or practice of the defendant gave rise to the alleged constitutional violation. The remaining common law claims of negligence and assault and battery will be remanded, as they would be more properly adjudicated in the Superior Court of the District of Columbia ("Superior Court").

## I. BACKGROUND

On October 21, 2009, the plaintiff called 911 and informed the answering dispatcher that her boyfriend, the Decedent, had locked himself in the bathroom of the apartment they shared, located at 905 21st Street N.E., Washington D.C., and was refusing to come out. Am. Compl. ¶ 5. The plaintiff told the dispatcher that no violence had occurred, but that she was concerned about the Decedent becoming suicidal or "paranoi[d]," and feared that she or her children may be in danger. Id. The plaintiff alleges that the dispatcher failed to accurately convey this information to the responding officers and instead informed the two officers that an "unwanted guest" had locked himself in the bathroom. Id. When two officers from the Metropolitan Police Department arrived at the plaintiff's apartment at 5:32 a.m., they escorted the plaintiff and her children from the apartment, id. ¶ 10, whereafter they "pushed open the door to the bathroom" and entered the bathroom to find the Decedent pointing a gun at them,[2] id. ¶ 7. The officers then "discharged their service revolvers, striking the Decedent." Id. The Decedent was subsequently pronounced dead at Howard University Hospital at 5:48 a.m. Id. ¶ 9.

---

[2] The plaintiff's Amended Complaint seems to accept that the Decedent was holding a gun, as indicated in the police report, but in the plaintiff's Opposition to the Motion to Dismiss, and in the second notice letter sent to the Mayor of the District of Columbia, she states that the Decedent did not have a gun. Am. Compl. ¶ 7, Pl.'s Opp'n ¶¶ 3, 5. Because a motion to dismiss is intended to evaluate the validity of the pleadings themselves, Fed. R. Civ. P. 12(b)(6), the factual allegations made outside the complaint, particularly those that contradict the complaint, should not be considered in deciding a motion to dismiss. See Henthorn v. Dep't of Navy, 29 F.3d 682, 688 (D.C. Cir. 1994) (refusing to consider factual allegations made in a brief opposing a motion to dismiss that contradicted the factual allegations made in the complaint) (citing Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988); Orthmann v. Apple River Campground, 757 F.2d 909, 915 (7th Cir. 1985).

On December 7, 2009, through her counsel at the time, the plaintiff sent a letter to the Mayor of the District of Columbia ("Mayor") notifying him that "[o]n October 21, 2009 at approximately 5:20 a.m., at 905 [] 21st St. N.E., Apartment No. 10, Washington D.C. 20002, [the Decedent] was fatally shot inside his apartment while in the bathroom, due to the improper and/or negligent acts of police officers of the District of Columbia Metropolitan Police Department." Def.'s Mot., Exhibit ("Ex.") A (plaintiff's first notice letter to the Mayor's office). The letter further stated that "a claim is being made, on behalf of the Estate of James B. Miller for fatal personal injuries, against the District of Columbia, and/or the Metropolitan Police Department, due to the negligent and careless acts of employees and/or police officers . . . [,] which resulted in the wrongful death of James B. Miller." Id. The letter stated that it was sent to the Mayor to provide the notice required by D.C. Code § 12-309, and that the plaintiff was making a claim against the District. Id. Finally, it stated that the notice requirements would be assumed satisfied unless "otherwise notified." Id. On February 22, 2010, the plaintiff sent another letter to the Mayor's office through her current attorney, again notifying him of her intention to file a claim against the District. Def.'s Mot. Ex. B (plaintiff's second letter to the Mayor's office). The letter again references the events that took place on October 21, 2009, stated that the responding officers lacked probable cause to use deadly force, and asserted that the use of deadly force violated the Decedent's constitutional rights. Id.

The plaintiff filed her amended complaint on November 15, 2010, claiming that the District negligently caused the Decedent's death, that the District is liable for the responding officers' alleged assault and battery of the Decedent, and that the District is liable under 42

U.S.C. § 1983 for the officers' violations of the Decedent's Fourth Amendment rights.[3] See Am. Compl. at 1. More specifically, the plaintiff claims that the District of Columbia is liable for the allegedly negligent act of the 911 dispatcher in incorrectly identifying the Decedent as an "unwanted guest," which, the plaintiff claims, prevented the officers from realizing the barricade situation involved a potentially mentally ill individual. Id. ¶ 8. The plaintiff also claims that the District is negligent because it improperly trains its officers to handle barricade situations, and that the District is liable for the officers' negligent application of their training. Id. ¶ 15. Next, the plaintiff claims that the responding officers, while working within the scope of their employment with the District, shot the Decedent without legal justification or probable cause, thus committing an assault and battery. Id. ¶ 22-24. Finally, the plaintiff claims the District is liable for the officers' alleged violation of the Decedent's Fourth Amendment rights because the officers were "enforcing the District's long[-]standing policy instituted and sanctioned, by the District, on the use of deadly force," when they shot the Decedent, and simultaneously that it was "the District's failure to properly train its police officers on the proper procedures involving [barricaded] individuals" that resulted in the Decedent's death. Id. ¶ 29.

The District moves to dismiss the plaintiff's Amended Complaint on the grounds that: (1) the plaintiff failed to comply with the statutory notice requirement of D.C. Code § 12-309, (2) the plaintiff failed to state claims of negligence on which relief can be granted, (3) the assault and battery claims are invalid because the officers were acting reasonably, and (4) the plaintiff failed to show that the incident occurred as the result of a policy or practice of the District as required to adequately plead a § 1983 claim. Def.'s Mot. at 1. Specifically, with regard to the § 1983 claim against the District, the defendant claims that the plaintiff has failed to plead any

---

[3] The plaintiff first filed her complaint in the Superior Court for the District of Columbia on July 26, 2010, which was removed to this Court on October 18, 2010 pursuant to 28 U.S.C. § 1441(d) when the defendant District of Columbia filed a notice of removal.

4

facts that indicate the officers were acting pursuant to a policy of the District, and that any suggested "deficiencies in the District's training programs are premised on the facts of this case only." Id. at 6. Similarly, the defendant maintains that the plaintiff has failed to show a causal link between any alleged policy of the District and the purported Fourth Amendment violations. Id.

The plaintiff, not surprisingly, challenges the defendant's arguments for dismissal, albeit mostly by simply reiterating the allegations in the Amended Complaint. Pl.'s Opp'n at 1. Although the Amended Complaint alleges that the District failed to properly train its officers, the plaintiff's opposition fails to make arguments in support of this allegation.

## II. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a complaint properly states a claim on which relief may be granted. Woodruff v. DiMario, 197 F.R.D. 191, 193 (D.D.C. 2000). For a complaint to survive a Rule 12(b)(6) motion, Federal Rule of Civil Procedure 8(a) requires that it contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although "detailed factual allegations" are not required, to withstand a Rule 12(b)(6) motion a plaintiff is required to provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007)), in order to "give the defendant fair notice . . . of what the claim is and the grounds upon which it rests," Twombly, 550 U.S. at 555 (citation omitted). In other words, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a]

reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). "A complaint alleging facts which are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks omitted) (citing Twombly 550 U.S. at 557).

In evaluating a Rule 12(b)(6) motion, the Court must "liberally construe" the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotation marks and citations omitted), and the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice," E.E.O.C v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997) (footnote omitted). Although the Court must accept the plaintiff's factual allegations as true, any conclusory allegations are not entitled to an assumption of truth, and even those allegations pleaded with factual support need only be accepted to the extent that "they plausibly give rise to an entitlement to relief." Iqbal, 129 S. Ct. at 1950.

### III. LEGAL ANALYSIS

A. The plaintiff's § 1983 claim

Section 1983 of Title 42 of the United States Code creates a private cause of action as a remedy against constitutional violations. 42 U.S.C. § 1983 (2006). The act states, in relevant part, that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

6

Id. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Cooper, 490 U.S. 386, 394 (1989) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).

To survive a Rule 12(b)(6) motion, a complaint asserting municipal liability under § 1983 must plead facts alleging (1) a violation of a constitutional right or rights conferred by federal law and (2) facts alleging that the municipality's policy or custom caused that violation. Warren v. District of Columbia, 353 F.3d 36, 38 (D.C. Cir. 2004) (citing Collins v. City of Harker Heights, 503 U.S. 115, 123-24 (1992); Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003)).

Regarding the first of these two elements, the Fourth Amendment provides a proper constitutional predicate for claims of excessive force by police officers, and guarantees individuals the right to be secure from unreasonable searches and seizures. Graham, 490 U.S. at 394. Thus, whether the force applied by an officer violates an individual's Fourth Amendment rights turns on reasonableness. Tennessee v. Garner, 471 U.S. 1, 7 (1985). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (citation omitted). "This balancing test is both objective and fact-sensitive; it looks to the totality of the circumstances known to the officer at the time of the challenged conduct, and it accords a measure of respect to the officer's judgment about the quantum of force called for in a quickly developing situation." Martin v. Malhoyt, 830 F.2d 237, 261 (D.C. Cir. 1987).

As for the second element, while municipalities and local government entities are considered "persons" for the purposes of § 1983, they can be held liable for the constitutional

7

violations of their employees <u>only</u> if the employees are acting pursuant to a policy or practice of the municipality or local government.  <u>Monell v. Dept. of Social Servs. of City of New York</u>, 436 U.S. 683, 689-694 (1978).  Thus, as a municipality, the District cannot be held liable under a theory of <u>respondeat superior</u>, <u>Triplett v. District of Columbia</u>, 108 F.3d 1450, 1453 (D.C. Cir 1997), because it is only "[w]here the official policy of the city <u>causes</u> an employee of the city to deprive a person of such rights in the execution of that policy, [that] the city may be liable," <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 814 (1985) (emphasis added).  The policy itself must be the "moving force" behind the violation, <u>Carter v. District of Columbia</u>, 795 F.2d 116, 122 (D.C. Cir. 1986) (quoting <u>Monell</u>, 436 U.S. at 694), and there must be an affirmative link between that policy and the alleged violation, <u>Tuttle</u>, 471 U.S. at 823.

Additionally, only in limited circumstances can a municipality's failure to train employees constitute a policy or practice, and thus serve as the basis for municipal liability. <u>Atchinson v. District of Columbia</u>, 73 F.3d 418, 421 (D.C. Cir. 1996) (citing <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 387 (1989)).  Under the policy or practice framework for municipal liability set forth in <u>Monell</u>, a municipality's failure to adequately train can be considered a policy or practice only when the failure to train or supervise its employees amounts to "deliberate indifference toward the constitutional rights of persons in its domain."  See <u>Daskalea v. District of Columbia</u>, 227 F.3d 433, 441 (D.C. Cir. 2000) (interpreting <u>Monell</u> and noting that a municipality's inaction can constitute a policy or custom); <u>Harris</u>, 489 U.S. at 389 (1989) (limiting § 1983 claims against municipalities based on the failure to train to cases only where the municipality consciously exhibited deliberate indifference).  "Deliberate indifference is determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations, [which is] an objective standard."  <u>Baker</u>, 326 F.3d at 1307.

> [The deliberate indifference] standard involves more than mere negligence, and it does not require the city to take reasonable care to discover and prevent constitutional violations. It simply means that, faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction.

Robertson v. District of Columbia, 2010 WL 3238996 at *6 (D.D.C. Aug. 16, 2010) (internal quotation marks omitted) (citing Warren, 353 F.3d at 39; Baker, 326 F.3d at 1306); accord Smith v. District of Columbia, 674 F. Supp. 2d 209, 212 (D.D.C. 2009), Martin v. District of Columbia, 720 F. Supp. 2d 19, 23-24 (D.D.C. 2010). The most common and accepted means of demonstrating deliberate indifference is by showing "a pattern of similar constitutional violations by untrained employees." Connick v. Thompson, ___ U.S. ___ ,___ , 131 S. Ct. 1350, 1367 (2011). However, where the need for specific training, such as training police officers on the constitutional limits to the use of deadly force, reaches the level of "moral certainty," Harris, 489 U.S. at 390 n.10, the "unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." Connick, 131 S. Ct. at 1361. Finally, while it has been recognized that officers who have been adequately trained pursuant to a municipality's policy make mistakes, mistakes alone are not sufficient to subject the municipality to § 1983 liability, nor is the occasional misapplication of a sound policy a basis for finding § 1983 liability. See Harris, 489 U.S. at 391.

The defendant's motion to dismiss the plaintiff's § 1983 claim focuses on the second element of the two-element test—the requirement that the plaintiff show that the alleged violation occurred as a result of a policy or practice of the District—and the Court's analysis will therefore similarly focus on this second element. The plaintiff claims that it was "the District's long standing policies on the use of deadly force [] on barricaded individuals that caused the [D]ecedent's death." Am. Compl. ¶ 29. In her Amended Complaint, the plaintiff references two

9

policies in support of this assertion: she claims that the officers were acting pursuant to one, and she asserts that the officers should have been trained to comply with a second. See Am. Compl. ¶¶ 11-13.

The first policy the plaintiff relies upon in support of her § 1983 claim is the District of Columbia Municipal Regulation on the use of firearms and other weapons by its police officers, which states, in relevant part:

> [i]t is the policy of the Metropolitan Police Department that each member of the department shall in all cases use the minimum amount of force which is consistent with the accomplishment of his or her mission, and shall exhaust every other reasonable means of apprehension or defense before resorting to the use of firearms.

Am. Compl. ¶ 12 (citing D.C. Mun. Regs. Subt. 6-A, § 207). The plaintiff contends that the District should be liable for the alleged violations of the Decedent's Fourth Amendment rights because the responding officers were acting pursuant to this policy. Am. Compl. ¶¶ 12, 29. While the plaintiff has indeed succeeded in identifying an existing policy, she has asserted no facts which allege that this first policy upon which she relies was in any way causally connected to the alleged Fourth Amendment violation. In fact, this first policy cited by the plaintiff actually requires that officers "use only the minimum amount of force" needed to accomplish their objective and that they "exhaust every other reasonable means of apprehension or defense before resorting to use of firearms." Pl.'s Opp'n ¶ 3. The only facts the plaintiff has asserted in her complaint concerning the officers' use of force—that the District's policy required minimum force and exhaustion of non-violent alternatives—fall well within the reasonableness standard of the Fourth Amendment. Id.

Furthermore, through the facts contained in her complaint, the plaintiff seems to actually be arguing that the responding officers acted in violation of the cited policy, not in accordance

with it. Am. Compl. ¶ 12. Specifically, the plaintiff states that the officers' actions occurred "in violation of" the District's police regulations, id., indicating that the cited policy was not in any way the "moving force" behind the alleged violations. This distinction is crucial given Monell's foreclosure of respondeat superior as a theory for municipal liability for constitutional violations based on the acts of the municipality's employees. The plaintiff has therefore failed to adequately plead a basis for finding § 1983 liability against the District predicated on the first policy upon which she relies.

The plaintiff next seeks support for her § 1983 claim by asserting that the District failed to train its officers to properly address barricade situations. Id. ¶ 29. Arguing generally that the District should be liable for the Decedent's death, the plaintiff states that the

> District's [p]olice [o]fficers were supposed to have been trained, or should have been trained that there are four options, that apply to [a barricade] situation: First, amass officers, amass firepower, and assault; [s]econd, selective use of sniper fire; [t]hird, use chemical agents; and [f]ourth, contain the area and have a trained negotiator come in and try to talk . . . the barricaded individual out.

Id. ¶ 11 (emphasis omitted). The plaintiff adds that the District's officers should have been trained on when the use of deadly force is appropriate in "barricade situations." Id. ¶ 13. However, the plaintiff provides no authority for the proposition that the District should have adopted a policy that comports with what she proposes, nor is there any indication that this is a policy that has been adopted by the District or any other municipal police department. While the plaintiff alleges that the District "knew, or through the exercise of ordinary care, should have known, that enforcement of [its] policies, concerning apprehension of barricaded individuals, and their policies on the use of deadly force, violates the rights of potential barricaded individuals," id. ¶ 13, she fails to provide any facts indicating how the District knew or should have known that a failure to train for such situations was sufficient to "amount to deliberate indifference

11

toward the constitutional rights of persons in its domain." Daskalea, 227 F.3d at 441 (internal quotations omitted) (quoting Harris, 489 U.S. at 388-89 & n. 7). The plaintiff has referenced no similar occurrences showing the District's failure to properly train its officers for the situation they confronted in this case, but has based her allegations solely on this individual incident. Nor has she pleaded any facts to show that the District did not adequately train its officers to confront barricade situations. To survive the defendant's motion to dismiss under the standard set forth in Twombly and Iqbal, the complaint must contain facts demonstrating or showing the District's actual or constructive notice of deficiencies in its training, Robertson, 2010 WL 3238996 at *8, and it must include more than conclusory statements unsupported by any factual information, Martin, 720 F. Supp. 2d at 23. But that is exactly what the plaintiff has done here, having asserted nothing more than conclusory allegations of insufficient training, while failing to include facts to support her claim that the District failed to properly train its officers when confronting barricade situations.

Because the plaintiff has failed to plead facts which show that a policy or practice of the District was as a "moving force" behind any alleged constitutional violation by the responding officers, as required by Monell, or that the District acted with deliberate indifference in failing to train its officers, the plaintiff's § 1983 claim against the District cannot survive the District's motion to dismiss.

B. The plaintiff's common law claims

Section 1441 of Title 42 of the United States Code provides a mechanism for claims originally filed in state court to be removed to federal court. The act states, in relevant part, that:

> [e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the

> district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a) (2006).

Additionally, where a complaint removed to federal court is composed of multiple claims, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (2006). The Court may, however, decline to exercise jurisdiction over supplemental claims when the claims over which it has original jurisdiction are dismissed, 28 U.S.C. § 1367(c)(3), as supplemental jurisdiction is a "doctrine of discretion, not a plaintiff's right." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Thus, if the federal claims in a case that has been removed to federal court are resolved before trial, the district court may dismiss the remaining claims or remand the claims to state court. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 352-53. By declining to exercise supplemental jurisdiction, the district court can ensure fairness to litigants and promote judicial economy. Gibbs, 383, U.S. at 726. Moreover, "needless decisions of state law" should be avoided by federal courts. Id.

In light of the dismissal of the plaintiff's § 1983 claim against the District, there are no remaining claims in the plaintiff's complaint over which this Court has original jurisdiction. Because the remaining common law claims against the District were before the Court pursuant to its supplemental jurisdiction under § 1367(c), the court may decline to entertain those claims if the claims over which the Court had original jurisdiction have been dismissed. 28 U.S.C. §

1367(3). Accordingly, the Court will remand the remaining common law claims to the Superior Court.[4]

## V. CONCLUSION

For the foregoing reasons, the Court concludes that the defendant's motion to dismiss the § 1983 claim should be granted. Accordingly, the Court will dismiss the plaintiff's § 1983 claim. Furthermore, as the common law claims made by the plaintiff were before the Court by virtue of its supplemental jurisdiction, the plaintiff's common law claims will be dismissed without prejudice.

**SO ORDERED** this 21st day of July, 2011.[5]

---

[4] Remanding state law claims after the dismissal of the federal claim is preferable to dismissal where proceeding in that manner will promote judicial efficiency and economy. Here, in addition to preserving judicial resources, by remanding the case to the Superior Court, the Court will relieve the plaintiff from having to pay her attorney to draft and re-file a new complaint and the filing fee she would have to again pay at the Superior Court. See Carnegie-Mellon, 484 U.S. at 353.

[5] An order will be issued contemporaneously with this memorandum opinion (1) dismissing the plaintiff's claim under 42 U.S.C. § 1983, (2) remanding this case to the Superior Court, and (3) closing this case.